Russell J. Emmons
Emmons Law office
P.O. Box 1920
Lakeside, CA 92021
619-757-7327
Russell@emmonslawoffice.com

Attorney for Plaintiff
CHRISTOBAL MUNOZ

UNITED STATES FEDERAL COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOBAL MUNOZ,<br><br>             Plaintiff,<br><br>     vs.<br><br>BARONA BAND OF MISSION INDIANS,<br><br>             Defendant | Case No.: 17CV2092-BAS-AGS<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S REQUESTED DENIAL OF MOTION TO DISMISS<br><br>Hearing Date: December 11, 2017<br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT**<br><br>Dept. 4B<br>Hon. Cynthia Bashant |

<u>MEMORANDUM OF POINTS AN AUTHORITIES</u>

**I.     INTRODUCTION**

**II.    STATEMENT OF FACTS**

**a)  Plaintiff's Employment and Initial Injury**

1. The Plaintiff was employed as a heavy equipment operator with at the Barona Resort & Casino, owned and operated by the Defendant.

2. On October 21, 2015 the Plaintiff suffered an injury when he slipped on a wet surface while working.

3. The Plaintiff suffered permanent damage to his knees as a result of the fall.

4. Shortly after his fall, the Plaintiff filed a worker's compensation claim the Defendant

5. and began receiving payments and medical treatment while his worker's compensation claim was being investigated.

6. On or about March 2016, the Defendant denied Plaintiff's worker's compensation claim. Claiming Plaintiff had suffered a previous injury and refusing to accept any medical evidence from his treating physicians to the contrary. The Plaintiff had thirty days to challenge that decision.

7. During the thirty day appeal window, the Defendant's claims adjuster contacted the Plaintiff multiple times and threatened and harassed Plaintiff regarding his claim.

8. In particular, the claims adjuster told the Plaintiff that he would face jail time if the Plaintiff appealed the worker's compensation decision.

9. Plaintiff discussed this issue with Defendant's Human Resource Department who informed him that he should drop his claim to avoid jail time and file for state disability, and that the Defendant would contest any unemployment benefits.

10. Plaintiff asked what his next steps would be and was informed by the HR department at Barona that he should seek medical treatment and could return to work once he recovered.

11. From Mach 2016 to September 2016 the Plaintiff continued to seek treatment at his own expense in the hopes of returning to his job.

12. On September 15, 2016, Defendant terminated the Plaintiff for being on medical leave.

13. At no time was the Plaintiff offered any alternative position or any means of coming back until his knee was fully healed.

14. The Defendant never produced any evidence documentary or otherwise to substantiate its claim that it *had* indeed offered such a position.

15. On or about February, 2017, Plaintiff then filed an initial set of claims with the Tribal Court, alleging claims of including worker's compensation retaliation, negligence, and wrongful termination.

16. On April 21, 2017, the Tribal Court dismissed all three claims in a written order. In particular, the Tribal Court ruled on the evidence in a demurrer saying the Plaintiff's injury was not serious, and not incurred while working, despite no medical evidence being in issue in the demurrer and none being submitted.

17. On or about May 2017, Defendant's attorney replied that the Tribal Court had no internal procedures for appeal, an thereby dismissed the Plaintiff's appeal.

18. After receiving Defendant's attorney's response Plaintiff submitted two new claims challenging the due process of the Tribe's internal procedures, and challenging the due process of the Tribe's judicial procedures. The claims requested injunctive relief and/or money damages.

19. On or about June 2017, the Tribe argued it had not waived its sovereign immunity for due process claims and had no forum to hear these claims.

20. On or about July 2017, Plaintiff submitted a third set of claims alleging the same due process violations and citing case law indicating that the ICRA had waived the Tribe's sovereign immunity for ICRA claims in Tribal Court.

21. On July 21, 2017 the Defendant responded again that it had no forum for due process challenge, and that it still had not waived its sovereign immunity.

22. Once the Plaintiff received confirmation that the Tribe had no venue for redress of Plaintiff's grievances, this suit was filed.

23. The suit requested both money and injunctive relief.

### III.  STATEMENT OF LAW
#### a) Indian Sovereignty Generally

In general, Indian tribes enjoy inherent sovereignty except where it has been taken away from them by treaty or Congress. *Ortiz-Barraza v. United States*, 512 F.2d 1176, 1179 (9th Cir. 1975). "Congress has plenary authority to limit, modify or eliminate the powers of local self-government which the tribes otherwise possess." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 56, 98 S. Ct. 1670, 1676, 56 L. Ed. 2d 106 (1978)

In the absence of Congressional statute, Tribes enjoy immunity from suit for those matters that are considered intramural to Tribal Sovereignty, the most common example being limits on Tribal Membership. *Lewis v. Norton*, 424 F.3d 959, 961 (9th Cir. 2005).

In recent years, the Federal Court has necessarily recognized that many laws of general applicability are in fact enforceable against Indian Tribes even without a specific waiver of sovereign immunity based on Congress's plenary authority over Indian Tribes. *Donovan v. Coeur d'Alene Tribal Farm*, 751 F.2d 1113, 1116 (9th Cir. 1985) The enforcement of these laws require an exhaustion of Tribal Remedies prior to moving into other forums. *Nat'l Farmers Union Ins. Companies v. Crow Tribe of Indians*, 471 U.S. 845, 857, 105 S. Ct. 2447, 2454, 85 L. Ed. 2d 818 (1985) (referring to criminal matters and the general exhaustion requirement).

In Donavan, the Court specifically stated that, "we have not adopted the proposition that Indian tribes are subject only to those laws of the United States expressly made applicable to them." *Donovan* at 1116. The Court then ruled that OSHA was applicable against Indian Tribes.

#### b)  ICRA

The Indian Civil Rights Act is an express act of Congress applying those constitutional protections to people under the jurisdiction of the Tribe. Congress sought in crafting the Indian Civil

Rights Act to protect those citizens under the authority of the Tribe and likewise support Tribal Sovereignty.

The Indian Civil Rights Act provides that a Tribe shall not "deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law." 25 U.S.C.A. § 1302 (West)". This statute is interpreted to serve as a limited waiver of Tribal Sovereignty. This waiver is complete in Tribal Court, the question remains whether it can be upheld in Federal Court as well. Federal Courts have extended this waiver to apply to habeas corpus actions because the statute specifically provides this as a remedy.

Cases analyzing the Indian Civil Rights Act have been anything but consistent or clear. The record is likewise sparse of cases when a Tribe has intentionally attempted to abrogate a Plaintiff's rights by refusing to establish a forum. In *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 65, 98 S. Ct. 1670, 1680, 56 L. Ed. 2d 106 (1978), The Court analyzed whether there is an express waiver of immunity in the statute as the first grounds of bringing the case to Federal Court. The court then ruled against the Plaintiff noting in passing that provided Tribal Remedies are sufficient. *Id.*

Striking a different path yet again the Court in *Barker v. Menominee Nation Casino*, 897 F. Supp. 389, 395 (E.D. Wis. 1995) found that Tribal Courts, independent of Tribes and casinos can be sued for violations of ICRA. *Id.*

The Court then moved back towards its original holding that "ICRA only provides a basis for an individual to bring a habeas corpus civil claim." *Pink v. Modoc Indian Health Project, Inc*., 157 F.3d 1185, 1189 (9th Cir. 1998). However, in so doing it cited Santa Clara Pueblo which held that Tribal Remedies provided are effective. Once again, the Court did not analyze or decide what happens when a Tribe refuses to establish a forum for ICRA claims contrary to the purpose of the statute.

In *Demontiney v. U.S. ex rel. Dep't of Interior, Bureau of Indian Affairs*, 255 F.3d 801, 814 (9th Cir. 2001), the Court blanket stated that Tribal Remedies being insufficient was grounds to allow suit. In ruling against the Plaintiff, however, the Court made particular note of the fact that the due process claim was never litigated in Tribal Court and raised on appeal for the first time.

The Court has never been presented with a case where the Tribe claims that the Court, Casino, and Tribe are all indivisible merely to eviscerate the rights of Plaintiffs. The Court has likewise never been faced with a fact pattern where a Tribe deliberately fails to provide a venue for ICRA claims merely to frustrate the statute, as it is contended here.

## IV.   LEGAL ARGUMENT

### a) Plaintiff's Claim is an Original Due Process Claim and Litigated to its conclusion in Tribal Court

The Plaintiff's original claim that gives rise to this action is an ICRA due process claim. While the Plaintiff has pursued Tribal Remedies for personal injury, wrongful termination, and retaliation, that is not what brings the Plaintiff into Federal Court.

The thrust of the Complaint is that the Tribe's procedures in ruling on medical evidence in a demurrer, making factual assertions, having unconscionable statutes of limitations (including five days for wrongful termination), and failure to establish a forum in Tribal Court for his ICRA claim violates the Plaintiff's due process rights.

While the Tribe has attempted to ignore these claims by mischaracterizing them as appeals, this misses the point. The Plaintiff already submitted an appeal which the Tribal Court disposed of *before* bringing his due process claim. The Tribe has repeatedly affirmed, that the due process claim is distinct, but that it has no forum for it to be heard. Allowing the Tribe to do this violates the intent of ICRA. Nothing in Defendant's motion, declarations, or stated case law addresses this fact. The

Tribe should not be allowed to escape this lawsuit by mischaracterizing the complaint or nature of the proceedings.

### b) ICRA Serves as a Valid Waiver of Sovereign Immunity in this Case

No principle of ICRA or this court prevents this lawsuit from being heard. Congress has clearly abrogated Tribal Sovereignty to make ICRA effective. This is shown by the explicit text of the statute and the implications of case law.

Tribes are already subject to ICRA for Habeas Corpus actions. In addition, the analysis of the case law cited shows that while the Court has been quite clear on some points, it has never been faced with a deliberate action to frustrate ICRA.

The Defense might claim that Plaintiff's original lawsuits were disposed of, and so they were. However, the Tribe has yet to do anything beyond acknowledging that the Plaintiff has raised a valid ICRA claim. Had the tribe heard the ICRA case this lawsuit might well be moot. However, the Court is not testing the sufficiency of Tribal remedies, merely accepting the Tribe's assertion that it has none.

Likewise, the Tribal Court is a valid target for a lawsuit. Since, in the view of the Defendant, the Tribal Court cannot be separated from the Tribe itself the suit should be allowed to prevent further interference with the rights of potential Plaintiffs.

### b) Existing Case Law does not Preclude this Lawsuit.

Defendant has attempted to avoid this lawsuit by claiming multiple cases preclude the suit including *Johnson River, Demontiney, Pink,* and of course *Santa Clara Pueblo*. However Defendant's analysis misses the central point of all these cases. The Court has never analyzed when a Tribal remedies is nonexistent before. The Court has never analyzed a case where the Plaintiff made an original due process claim with the Tribal Court.

In *Santa Clara Pueblo* the Court analyzed whether it was proper under the circumstances to grant a Federal Cause of action for civil claims other than Habeas Corpus. In ruling against the Plaintiff the Court acknowledge both that Congress had the authority to waive the Tribe's sovereign immunity and that it was within the discretion of the Court to find a cause of action for all civil claims.

The Court then decided against such a decision because, among the foundations for its decision, it found in general that existing Tribal Remedies were sufficient, (Plaintiff had not claimed that Tribal Remedies were nonexistent, and the exact nature of the rule was left unanalyzed). *Santa Clara Pueblo* at 95.

In *Johnson River*, a Plaintiff filed an ICRA claim directly in Federal court after losing his contract lawsuit in Tribal court. *Johnson v. Gila River Indian Cmty.*, 174 F.3d 1032, 1034 (9th Cir. 1999). The Court ruled against the Plaintiff and acknowledged that the Plaintiff made no attempt to vindicate his ICRA rights in Tribal Court, that is not the case here.

The Plaintiff here has attempted twice to bring an ICRA claim before the Tribal Court only to be told by the Defendant that there is no forum for due process claims. Thus the Plaintiff has proven that he has exhausted his Tribal Remedies.

Defendant's reliance on *Demontiney* likewise is unfounded. While the *Demontiney* Court mused that an existing inadequate forum would not waive sovereign immunity it was unable to fully analyze the issue because the Plaintiff had, again, not attempted to bring a Due Process claim in Tribal Court first; much less be told that there was no forum for his claim. *Demontiney v. U.S. ex rel. Dep't of Interior, Bureau of Indian Affairs*, 255 F.3d 801, 814 (9th Cir. 2001) (Recognizing the Plaintiff's lack of effort in pursuing Tribal Remedies). The Court conjectured that there would be no waiver of immunity if the Tribal Remedies were insufficient, but did not definitively analyze or rule

on the issue. The Court instead relied on the holding of Santa Clara Pueblo v. Martinez, which does not address what happens when a Tribe refuses to establish a forum. *Id.* (Citing *Santa Clara Pueblo*).

The Defendant also relies on *Pink v. Modoc* as a basis to dismiss this suit. However, this misses the fact that the Court in *Pink* relied directly on the reasoning of *Santa Clara Pueblo* which only held that Tribal Remedies provided are effective. Pink v. Modoc Indian Health Project, Inc., 157 F.3d 1185, 1189 (9th Cir. 1998) (citing *Santa Clara Pueblo).* The Court has not analyzed a fact pattern such as this namely: what happens when a Tribe refuses to establish a forum?

There is no case on record where a Defendant has willfully refused to establish a forum for due process claims merely to frustrate potential Plaintiffs. The Defendant's Tribal Court might provide remedies for personal injury, but it does not provide a remedy for claims under ICRA. Therefore, the case should be allowed to proceed.

   c)  **This lawsuit should be allowed on Public Policy grounds.**

Finally this lawsuit should be allowed for public policy reasons. There is no protection afforded a Plaintiff under ICRA when a Defendant Tribe refuses to establish a venue merely to frustrate their claims.

While the purpose of the Indian Civil Rights Act was partly to further tribal sovereignty, it was also to strengthen a protected class (those under the Tribe's jurisdiction) in their relationship viz-a-viz the tribe.

The Plaintiff has made every effort to vindicate his due process rights in Tribal Forums. He has brought original claims for his permanent injury, unlawful firing, and worker's comp retaliation.

The Tribe has belittled these claims by refusing even to allow Plaintiff to bring medical evidence into discovery as to the extent of his injuries. Defendant's hand-waving of the personal

Reply Opposing Defendant's Motion to Dismiss
9

injury claim and wrongful termination claim might escape the scrutiny of this Court, but it should not overlook that there was no forum for Plaintiff's due process claim.

ICRA affords no protection when a Tribe can escape liability merely by refusing to establish a forum. This cannot have been Congress' intent. Furthermore, the rights of Indian Tribes will not be frustrated by allowing such a suit. The Defendant can easily allow future due process claims in Tribal Court to avoid further interference. Allowing this suit to proceed will serve as a moderate deterrent and protect future Plaintiffs.

### d) The Plaintiff has Successfully Alleged that a Federal Law has been Violated

Defendant's third argument to preclude this lawsuit also fails. The Tribe claims that the Plaintiff has failed to state a claim because he has not alleged a violation of Federal Law. Indeed the complaint clearly states that it is for violations of the Indian Civil Rights Act, and clearly states in its fact pattern why this is so.

Defendant further claims that the suit is precluded because it includes money damages. This is likewise uncompelling. The lawsuit asks for multiple things including injunctive relief. The purpose in asking for multiple remedies was to allow the Court use its discretion to find an appropriate deterrent for future actions by Tribes. It is undesirable for future Defendants to frustrate a Plaintiff's claim by failing to establish a forum. This would eviscerate the purpose of ICRA to strengthen those under Tribal authority, including Tribal members viz-a-viz the tribe. Without the ability to seek redress in Tribal Court, or in Federal Court if the Tribe fails to comply, nothing prevents other Tribes from eliminating their forums in an attempt to likewise frustrate potential Plaintiffs.

Nothing in ICRA prevents awarding money damages in this case. There is no case cited by the Defense to preclude money damages as a means for Courts to secure ICRA's purpose. However,

if money damages are unacceptable, this Court has the discretion to strike that part of the complaint while allowing the case to proceed as the complaint also requests injunctive relief.

## V.   CONCLUSION

For the above reasons, the Plaintiff requests this court deny the motion to dismiss the complaint in its entirety and allow the case to proceed. Or, in the alternative, allow the complaint to be amended to only include the Tribal Court.

Dated: November 13, 2017                                        EMMONS LAW OFFICE

By:_____
Russell J. Emmons
Attorney for Plaintiff CHRISTOBAL MUNOZ